## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| Q'MAX AMERICA, INC., *et al* [1] | § | Case No. 20-60030-CML |
| | § | |
| Debtors. | § | (Jointly Administered) |

### TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF

**EMERGENCY RELIEF HAS BEEN REQUESTED. THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**RELIEF IS REQUESTED NOT LATER THAN JUNE 5, 2020.**

**PLEASE NOTE THAT ON MARCH 24, 2020, THE COURT INVOKED THE PROTOCOL FOR EMERGENCY PUBLIC HEALTH OR SAFETY CONDITIONS (ADOPTED BY GENERAL ORDER 2020-4, INVOKED BY GENERAL ORDERS 2020-10 AND 2020-10A, AND EXTENDED AND MODIFIED BY GENERAL ORDER 2020-11).**

**IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Q'Max America Inc. (2319) and Anchor Drilling Fluids USA, LLC (5395).

TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF
PAGE | 1

> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S REGULAR DIAL-IN NUMBER. THE DIAL-IN NUMBER IS +1 (832) 917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. YOU WILL BE ASKED TO KEY IN THE CONFERENCE ROOM NUMBER. JUDGE LOPEZ'S CONFERENCE ROOM NUMBER IS 590153.**
>
> **PARTIES MAY PARTICIPATE IN ELECTRONIC HEARINGS BY USE OF AN INTERNET CONNECTION. THE INTERNET SITE IS WWW.JOIN.ME. PERSONS CONNECTING BY MOBILE DEVICE WILL NEED TO DOWNLOAD THE FREE JOIN.ME APPLICATION.**

TO THE HONORABLE CHRISTOPHER M. LOPEZ, UNITED STATES BANKRUPTCY JUDGE:

Christopher Murray, the duly appointed trustee ("**Trustee**") for the chapter 7 estates of Anchor Drilling Fluids USA, LLC ("**Anchor Drilling**" or "**Borrower**") and Q'Max America Inc. ("**Q'Max America**" and together with Anchor Drilling, each a "**Debtor**" and collectively, "**Debtors**"), files this emergency motion ("**Motion**") pursuant to sections 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 363(c)(3), 364(d)(1), 364(e), 503, 506, and 507 of title 11 of the United States Code ("**Bankruptcy Code**"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), and 4001-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of Texas ("**Local Rules**"), seeking entry of an interim order, substantially in the form attached hereto as **Exhibit A** ("**Interim Order**"), and a final order ("**Final Order**")[2] (i) authorizing the Trustee to (a) obtain post petition financing ("**NM Financing**") pursuant to the terms and conditions set forth in the NM Note (as defined herein) and (b) use "cash collateral" (as such term is defined under section 363(c) of the Bankruptcy Code, "**Cash Collateral**"), (ii) authorizing the Trustee to grant adequate protection to the Prepetition ABL Secured Parties (as defined herein) and the Prepetition Parent Facility Secured Parties (as defined herein), (iii) scheduling a hearing ("**Final Hearing**") to consider entry of the

---

[2] The Trustee will file the form of Final Order prior to the Final Hearing (as defined herein).

TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF
PAGE | 2

Final Order, and (iv) granting related relief.  In further support of this Motion, the Trustee respectfully represents as follows:

## SUMMARY OF THE MOTION

1.      The Trustee seeks post-petition use of the Cash Collateral from the Prepetition ABL Secured Parties and access to post-petition financing on a superpriority basis from the NM Lenders.  The Trustee, having obtained authority to operate the Debtors' business, requires cash on hand and cash flow from operations to fund their liquidity needs and operate.  In addition, the Trustee requires immediate access to sufficient liquidity to maintain and perform on existing contracts in order to protect the assets of the chapter 7 estate of Anchor Drilling while working towards a successful sale of certain of Anchor's assets, in accordance with the budget approved by the Trustee and the NM Lenders ("**Budget**"). The Trustee seeks to have the NM Facility approved on an interim basis to borrow up to $10,000,000.

## EMERGENCY CONSIDERATION

2.      The Trustee requests emergency consideration of the Motion. Emergency consideration is sought in order to assure that the Trustee can maintain and protect the assets of Anchor Drilling. If emergency relief is not granted, the Trustee will be unable to perform on Anchor Drilling's service contracts and thereby preserve any value associated with maintaining such contracts pending a potential sale of assets, which constitute the primary assets of Anchor Drilling. Accordingly, the Trustee requests emergency consideration of the Motion. The relief is requested on or prior to June 5, 2020, as Anchor Drilling's use of cash collateral to purchase new inventory and satisfy post-petition operating expenses pursuant to the Order to Operate (as defined herein) shall have been exhausted by that time or shortly thereafter.

Trustee's Emergency Motion for Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 and 507, (i) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and  (vii) Granting Related Relief                                                                                                            Page | 3

## RELIEF REQUESTED

3. For the reasons set forth herein, the Trustee seeks the entry of interim and final orders providing the following relief:

a. Authorizing the Trustee on behalf of Anchor Drilling ("**NM Borrower**") to obtain post-petition credit financing in an aggregate principal amount of up to $30,000,000 million ("**NM Financing**") to be funded by the Prepetition ABL Secured Parties (in their capacity as lenders under the NM Facility, each a "**NM Lender**" and collectively, the "**NM Lenders**")[3] under a credit facility ("**NM Facility**") subject to the terms, conditions, and limitations set forth herein and in the documentation regarding the NM Facility (the loans thereunder the "DIP Loans"), which shall include (a) the refinancing of the outstanding Prepetition ABL Obligations into obligations under the NM Facility and (b) funding of those certain expenditures set forth in the Budget;

b. authorizing the Trustee, in connection with the NM Facility, to (a) execute and enter into the Senior Secured Super-Priority Post-Petition Line of Credit Promissory Note payable to the order of the NM Lender, substantially in the form attached as Exhibit A to the proposed Interim Order (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**NM Note**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and amendments executed and delivered in connection therewith, including the Budget, "**NM Documents**") and (b) to perform all such other and further acts as may be required by the NM Lender or Encina Business Credit, LLC, in its capacity as agent for the NM Lender ("**NM Agent**" and together with the NM Lender, "**NM Secured Parties**"), in connection with the NM Documents;

c. authorizing for the Trustee to execute and deliver the NM Note and the other NM Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

d. granting to the NM Agent, for the benefit of the NM Secured Parties, valid, enforceable, non-avoidable and automatically and fully perfected liens and security interests, subject only to the (a) adequate protection liens granted to the Prepetition Parent Facility Agent, (b) Prepetition Parent Facility Liens and (c) other valid, enforceable and non-avoidable liens that are (i) in existence on the Petition Date,

---

[3] Q Drilling Holdco LLC, an affiliate of certain stockholders of the Debtors and sponsor of the proposed purchaser of certain of Anchor Drilling's assets shall acquire a participation in the NM Facility in the amount of $3,500,000 pursuant to a Participation Agreement, to be dated on or about the date of the NM Note, by and between Encina Business Credit SPV, LLC and Q Drilling Holdco LLC ("**Participation Agreement**") upon entry of Interim Order and the filing of the Sale Motion (as defined herein).

(ii) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (iii) senior in priority to the liens granted the Prepetition ABL Secured Parties under and in connection with the ABL Credit Agreement in accordance with applicable law (such liens, the "Permitted Prior Liens"), to secure the NM Obligations, which liens and security interests shall have the rankings and priorities set forth herein;

e.    granting superpriority administrative claims to the NM Secured Parties payable from, and having recourse to, all prepetition and post-petition property of the NM Borrower's estates and all proceeds thereof (subject to entry of the Final Order), subject to Prepetition Parent Facility Adequate Protection Claims;

f.    authorizing the NM Borrower (A) upon entry of this Interim Order, to incur on the date of execution of the NM Note ("**Closing Date**"), NM Loans in an aggregate principal amount of up to $10 million ("**Initial NM Loans**") (the incurrence of such loans upon entry of this Interim Order, "**Interim Financing**") and (B) upon entry of the final order ("**Final Order**"), to incur NM Loans in the maximum aggregate principal amount of $30 million, in each case subject to the terms and conditions set forth in the NM Documents, this Interim Order and the Final Order;

g.    authorizing the Debtors' use of the proceeds of the NM Facility pursuant to the NM Note and the other NM Documents, including the Budget (as defined in the NM Note);

h.    authorizing the Debtors to continue to use the Cash Collateral (subject to the Budget) and all other Prepetition Collateral, and the granting of Adequate Protection to (a) the Prepetition Parent Facility Secured Parties and (b) the Prepetition ABL Secured Parties, in each case, with respect to, inter alia, such use of their Cash Collateral to the extent of diminution in the value of the Prepetition Collateral (including Cash Collateral);

i.    modifying the automatic stay as set forth herein and the NM Documents, to the extent necessary, to implement and effectuate the foregoing and the other terms and provisions of the NM Documents, the Interim Order and Final Order;

j.     (i) subject to entry of the Final Order, waiving any right to surcharge against the NM Collateral, including pursuant to section 506(c) of the Bankruptcy Code or otherwise, (ii) providing that the Prepetition ABL Secured Parties are not subject to the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code and (iii) providing that the Prepetition ABL Secured Parties are not subject to the equitable doctrine of "marshaling," or any other similar doctrine with respect to the NM Collateral;

k.      scheduling the Final Hearing to be held within 30 days after the Petition Date, to consider entry of the Final Order approving the NM Facility and use of Cash Collateral, as set forth in the Motion and the NM Documents; and

l.      granting related relief.

## JURISDICTION

4.      The United States Bankruptcy Court for the Southern District of Texas, Victoria Division ("**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (D), and (O). The Trustee consents to the entry, pursuant to Bankruptcy Rule 7008, of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.      Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief sought herein are §§ 105, 361, 364(c)(1), 364(c)(2), 364(c)(3); 364(d)(1), and 364(e) of the Bankruptcy Code, Bankruptcy Rules 4001 and 9014, and Local Rule 4001-1.

## BACKGROUND

7.      On May 24, 2020 ("**Petition Date**"), both Debtors filed voluntary petitions for relief in this Court under chapter 7 of the Bankruptcy Code ("**Chapter 7 Cases**").  The two Chapter 7 Cases are not substantively consolidated but are jointly administered.

8.      On or about May 24, 2020, the United States Trustee appointed the Trustee as the duly qualified trustee over the chapter 7 estates of the Debtors.

9.      On May 28, 2020, the Court entered an Order Granting Trustee's Emergency Motion to: (1) Continue Operation of Business; (2) Use of Cash Collateral with Consent on an

Trustee's Emergency Motion for Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 and 507, (i) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and  (vii) Granting Related Relief                                          Page | 6

Interim Basis; and (3) Maintain Cash Management System ("**Order to Operate**") [Dkt. No. 43].

10.     Q'Max America is a holding company which owns 100% of the equity interest in Anchor Drilling.

11.     Anchor Drilling is an oilfield services provider of drilling fluids, solids control and waste management solutions to customers in the upstream oil and gas drilling and producing industries.

12.     Currently, Anchor Drilling has approximately 13 service contracts in various states of performance requiring approximately 30-90 days to complete, if not sooner. If Anchor Drilling is unable to complete the contracts, the project owner, in most instances, has the contractual ability to take over and complete the work and seek a charge back or offset against Anchor Drilling for the project owner's costs to complete the project.  Other customers may contend that they are entitled to take similar action unless Anchor Drilling has the ability to complete the jobs. As of the Petition Date, Anchor Drilling assets include accounts receivable of approximately $26,000,000. Anchor Drilling requires the NM Facility to maximize the value of the projects and recovery on its accounts receivable, and, thereby, reducing the secured claims of ABL Secured Parties, whose claims are described below, against the Debtors' chapter 7 estates.

## PREPETITION CAPITAL STRUCTURE

11.     The Debtors are party to a certain Credit Agreement, dated as of the September 6, 2019 (as amended, supplemented or modified, "**Prepetition ABL Credit Agreement**"), by and among the Debtors, Encina Business Credit, LLC as the administrative agent and collateral agent (in such capacity, "**Prepetition ABL Agent**") and the various lenders party thereto from time to time ("**Prepetition ABL Credit Agreement Lenders**" and, together with the Prepetition ABL

TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF                                                                                                    PAGE | 7

Agent, "**Prepetition ABL Secured Parties**"), pursuant to which the Prepetition ABL Credit Agreement Lenders provided revolving credit loans in an amount not to exceed $65,000,000.00 and other financial accommodations to Anchor Drilling ("**Prepetition ABL Credit Facility**").

13.     Anchor Drilling secured its obligations under the Prepetition ABL Credit Agreement by granting the Prepetition ABL Agent, for the benefit of the Prepetition ABL Credit Agreement Lenders, first priority liens ("**Prepetition ABL Liens**") on substantially all of its assets ("**Prepetition ABL Collateral**").

14.     As of the Petition Date, the amount of the obligations owing under the Prepetition ABL Credit Agreement includes (i) unpaid principal of $19,710,331.26, (ii) accrued and unpaid interest in the amount of $108,328.21 as of Petition Date, and (iii) attorneys' fees, consultants' fees and other fees, expenses, advances, and costs incurred in connection with the Prepetition Credit Agreement (collectively, "**Prepetition ABL Obligations**").

15.     In addition to the Prepetition ABL Credit Agreement, the Debtors are party to a certain Credit Agreement, dated as of January 30, 2015 (as amended, supplemented or modified, "**Prepetition Parent Facility Credit Agreement**"), by and among borrowers party thereto ("**Prepetition Parent Facility Borrowers**"), HSBC Bank Canada, as collateral agent (in such capacity, "**Prepetition Parent Facility Agent**") and the various lenders party thereto from time to time ("**Prepetition Parent Facility Lenders**" and, together with the Prepetition Parent Facility Agent, "**Prepetition Parent Facility Secured Parties**"), pursuant to which the Prepetition Parent Facility Lenders provided revolving credit loan in an amount not to exceed $145,000,000 and other financial accommodations to the Prepetition Parent Facility Borrowers thereunder (collectively, "**Prepetition Parent Facility Obligations**").

TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND  (VII) GRANTING RELATED RELIEF                                                                                                                                    PAGE | 8

16.     The Trustee has not conducted any lien analysis and the representations made in this paragraph are not binding upon the Trustee or the bankruptcy estates. The Prepetition Parent Facility Obligations are secured by, among other things, liens ("**Prepetition Parent Facility Liens**") on all or substantially all of the Debtors' assets ("**Prepetition Parent Facility Collateral**"), which certain of the liens are subordinated to the liens of the Prepetition ABL Secured Parties pursuant to that certain Intercreditor Agreement, dated as of September 6, 2019 ("**Prepetition Intercreditor Agreement**") (the Prepetition ABL Collateral and the Prepetition Parent Facility Collateral are collectively referred to herein as "**Prepetition Collateral**"). Pursuant to the Prepetition Intercreditor Agreement and upon information and belief, the Prepetition ABL Agent's lien on certain of the Prepetition ABL Collateral is subject to first priority lien in favor of the Prepetition Parent Facility Agent on Anchor Drilling's real property, equipment, certain inventory and specific intellectual property. The Trustee understands that the Prepetition Intercreditor Agreement constitutes a "subordination agreement" under section 510 of the Bankruptcy Code. The NM Financing is not intended in any way to affect, abridge or impair the rights and claims preserved in favor of the Prepetition Parent Facility Agent and the Prepetition Parent Facility Secured Parties obtained prior to the Petition Date or under the Intercreditor Agreement. Moreover, and except with respect to inventory purchased with proceeds of the NM Facility or Cash Collateral pursuant to the Order to Operate, the NM Facility and the liens granted to the NM Agent for the benefit of the NM Lenders thereunder are intended to be in accordance with and consistent with the Intercreditor Agreement in all respects.

## NEW MONEY FACILITY

17.     The NM Agent and the NM Lenders are the same parties as the Prepetition ABL

TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF                                                                                    PAGE | 9

Secured Parties. The Prepetition ABL Secured Parties support the relief requested by the Trustee and the NM Lenders and consent to the priming of the Prepetition ABL Collateral securing the repayment of the Prepetition ABL Obligations by the NM Facility.

18.     Following commencement of the Debtors' chapter 7 cases, the NM Agent negotiated with the Trustee and his professionals the terms and conditions of a loan to finance the continuing performance of the contracts. This includes making funds available to maintain, protect, and preserve the Prepetition ABL Collateral, so as to maximize values for the estate and parties in interest.

19.     The NM Lenders propose to provide the Trustee with a $30,000,000 secured loan for the Trustee to maintain and improve the value of the accounts generated from the performance of the contracts in accordance with the Budget and availability under the NM Facility.

20.     In addition to the proposed terms described hereinabove, the NM Facility and the Interim Order, include, without limitation, the following terms as set forth more fully in the NM Note and annexed hereto as **Exhibit B**:

a.     <u>Case/Sale Milestones</u>. The NM Facility provides for the following milestones:

- On or before thirty (30) days after the Petition Date[4], the Final Order authorizing and approving the NM Financing on a final basis shall have been entered by the Court;

- On or before June 4, 2020, the Trustee shall file a motion ("**Sale Motion**") acceptable to the NM Agent seeking approval of a sale transaction for all, substantially all or a portion of the Anchor Drilling's assets ("**Sale Transaction**");

- On or before June 25, 2020, any auction in connection with the Sale Transaction

---

[4]     As may be extended by Bankruptcy Rule 9006.

TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF                                                                                                    PAGE | 10

shall be completed;

- On or before July 3, 2020, the Court shall enter an order approving a Sale Transaction acceptable to the NM Agent, which shall provide sufficient net proceeds to repay in full in cash the NM Obligations under the NM Facility upon the closing of the Sale Transaction; and

- On or before July 15, 2020, the Sale Transaction shall close and all amounts owed under the NM Facility shall be either indefeasibly paid in full in cash at closing, or (b) assumed in full by the purchaser on terms and conditions acceptable to the NM Agent in its sole discretion, and the commitments under the NM Facility shall have been irrevocably terminated.

b.  "Creeping" Roll Up.  All collections shall be applied to paydown the Prepetition ABL Obligations under the Prepetition ABL Credit Agreement until reduced to zero.  Upon entry of the Final Order, the next advance under the NM Facility shall be used to fully roll up any remaining balance outstanding under the Prepetition ABL Credit Agreement.

c.  Liens on Avoidance Actions/Priming Liens.  The NM Facility shall be secured by, among other things, (i) a first priority post-petition senior priming basis on all present and after acquired ABL Priority Collateral (as defined in the Intercreditor Agreement) of the Anchor Drilling, wherever located, including any claims or causes of action under chapter 5 or section 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable non-bankruptcy law[5] and (ii) in compliance with the Intercreditor Agreement, on a second priority post-petition basis on Parent Facility Priority Collateral (as defined in the Intercreditor Agreement) other than inventory purchased with proceeds of Cash Collateral or the NM Facility. The liens securing the NM Facility shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Bankruptcy Case or any claim for reclamation or return (whether asserted pursuant to section 546(c) of the Bankruptcy Code or otherwise).  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the liens securing the NM Facility.

---

[5]  The Trustee and the NM Lenders agree that liens on avoidance claims are limited to all avoidance claims, causes of action, or rights of recovery under Chapter 5 of the Bankruptcy Code or similar state laws available to the Trustee, that may exist against any current trade vendors of the Regional Business, but does not include any such causes of action against (i) vendors with no ongoing business with the Regional Business or (ii) the buyer or sellers of the Regional Business, the Prepetition ABL Secured Parties or the Prepetition Parent Facility Secured Parties or any of their affiliates. The term "**Regional Business**" shall have the definition assigned to it in Doc. No. 7 filed in the Chapter 7 Case of Q'Max America and further limited to the Debtors' business operations in the northeast of the continental United States.

    d.     <u>Default Provisions</u>.  The provisions of the automatic stay shall be modified so that after the occurrence of a default or event of default under the NM Facility, the NM Agent shall be entitled to an emergency hearing before the Bankruptcy Court, such hearing to be held within five (5) business days' of the filing of a motion seeking emergency relief from the automatic stay, the sole subject of which is the determination of whether an event of default had occurred under the NM Facility.

    e.     <u>Release of Claims Against Lenders</u>.  In consideration of the advances provided under the NM Facility, the Final Order shall include a release of all claims against the Prepetition ABL Secured Parties; provided, however, that the release does not apply to claims of fraud, intentional misconduct, breach of fiduciary duty or gross negligence.

    f.     <u>Limitation on Use of Loans</u>.  Proceeds of the NM Loan are to be used in strict adherence to the Budget subject to permitted variance requiring (i) weekly cash flow receipts of not less than 90% of the projected amounts set forth in the Budget and (ii) cumulative disbursements not to exceed 110% of the projected amounts set forth in the Budget.  The Budget further provides for advances on account of (i) administrative expenses of the Debtors' estates, (ii) Adequate Protection payments to the Prepetition Parent Facility Secured Parties, and (iii) payment of the Trustee's professionals, each such funding subject to the closing of a Sale Transaction resulting in (a) the payment of the NM Obligations in full in cash at closing, or (b) the assumption in full of the NM Obligations by the purchaser on terms and conditions acceptable to the NM Agent in its sole discretion.

    g.     <u>Fees</u>.  In connection with the NM Facility, the following fees shall be charged to the NM Borrower: (i) a fully-earned and non-refundable closing fee in an amount equal to $600,000 payable in full on execution and delivery of the NM Note; (ii) a fully-earned and non-refundable monthly administration fee in an amount equal to $6,000 payable in advance on the first business day of each month; and (iii) an unused line fee of one-half of one percent (.50%) per annum.

## <u>BASIS FOR RELIEF</u>

**A. The Requested Relief Should Be Granted Pursuant to Sections 364(c) and 364(d)(1) of the Bankruptcy Code.**

21.     As set forth above, the Trustee's ability to maintain Anchor Drilling's existing service contracts and allow the Trustee to preserve Anchor Drilling's assets for an eventual auction or sale hinges upon the Trustee being able to access post-petition financing.  Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of

business, (b) obtaining unsecured credit outside the ordinary course of business, and (c) obtaining credit with specialized priority or on a secured basis.  Pursuant to section 364(c) of the Bankruptcy Code, if a trustee cannot obtain post-petition credit on an unsecured basis, a court may authorize such trustee to obtain credit or incur debt that is entitled to super-priority administrative expense status, secured by a senior lien on unencumbered property or secured by a junior lien on encumbered property. *See* 11 U.S.C. § 364(c).

22.     Under section 364 of the Bankruptcy Code, courts also may authorize post-petition credit secured by a senior or equal lien on encumbered property if the trustee cannot obtain credit elsewhere and the interests of existing lienholders are adequately protected.  *See* 11 U.S.C. § 364(d)(1).  Specifically, section 364(d)(1) of the Bankruptcy Code provides, in relevant part, that a court may, after notice and a hearing:

> authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> (A)     the trustee is unable to obtain credit otherwise; and
>
> (B)     there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

### I.    The Trustee Exercised his Business Judgment in Entering Into the NM Facility.

23.     A trustee's decision to enter into a post-petition lending facility under section 364 of the Bankruptcy Code is governed by the business judgment standard.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit

Trustee's Emergency Motion for Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 and 507, (i) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and (vii) Granting Related Relief                                                                      Page | 13

parties in interest."); *see also In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of post-petition financing requires, *inter alia*, an exercise of "sound and reasonable business judgment."); *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivable facility and asset based facility were approved because they "reflect[ed] sound and prudent business judgment . . . [were] reasonable under the circumstances and in the best interest of [the trustee] and its creditors.").

24.     Bankruptcy courts routinely accept a trustee's business judgment on many business decisions, including the decision to borrow money.  *See, e.g., In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("[b]usiness judgments should be left to the board room and not to this Court").  Further, one court has noted that "[m]ore exacting scrutiny [of the debtor's business decisions] would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

25.     Bankruptcy courts generally will defer to a trustee's business judgment regarding the need for and the proposed use of funds unless such decision is arbitrary and capricious. *See In re Curlew Valley Assocs.*, 14 B.R. 506, 511–13 (Bankr. D. Utah 1981); *see also In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving interim loan, receivables facility and asset-based facility based upon prudent business judgment of the debtor). Bankruptcy courts generally will not second-guess a trustee's business decisions involving "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *Curlew Valley*, 14 B.R. at 513–14.

Trustee's Emergency Motion for Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 and 507, (i) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and (vii) Granting Related Relief
Page | 14

26.     The Trustee has exercised sound business judgment in determining the appropriateness of the NM Facility and have satisfied the legal prerequisites to incur debt on the terms and conditions set forth in the NM Note.  The use of Cash Collateral alone is insufficient to meet the Debtors' working capital needs to operate their businesses and complete or transition performance under its service contracts.  The NM Note contains terms and conditions that are the best available under the circumstances and provides the Debtors with sufficient liquidity during the period of the Budget.  In addition, the Interim Order preserves the rights of other parties in interest, to investigate and challenge the validity, enforceability, perfection, and priority of the Prepetition ABL Credit Agreement and Prepetition ABL Obligations and the liens and security interests granted in connection therewith.

27.     The funds provided by the NM Facility are essential to enable the Trustee to operate the Debtors' business during the course of these chapter 7 cases while working towards a sale transaction that is in the best interest of the estates.  Indeed, failure to obtain approval of the NM Facility will lead to a wind-down of the Debtors' business operations which, in turn, will preclude any sale of Anchor Drilling's assets, the preservation of approximately 140 jobs (upon information and belief), and adversely affect the value ultimately received by stakeholders.

28.     Accordingly, pursuant to sections 364(c) and (d) of the Bankruptcy Code, the Trustee respectfully submits that he should be granted authority to obtain financing from the NM Lender on the terms set forth in the NM Note.

### II.     The NM Facility Represents the Best Financing Available.

29.     A trustee seeking financing under section 364 of the Bankruptcy Code must make a reasonable effort to seek other sources of unsecured credit but is granted deference in acting in

Trustee's Emergency Motion for Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 and 507, (i) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and  (vii) Granting Related Relief                                                                                                PAGE | 15

accordance with its business judgment and, indeed, is not required to seek credit from every possible source. *See*, *e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37-40 (Bankr. S.D.N.Y. 1990) (approving financing facility and holding that debtor made reasonable efforts to satisfy the standards of section 364(c) to obtain less onerous terms where debtor approached four lending institutions, was rejected by two and selected the least onerous financing option from the remaining two lenders); *Bray v. Shenandoah Fed. Sav. & Loan Assoc. (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) ("[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable").

30.     Moreover, where few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom.*, *Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Garland Corp.*, 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) authorized, after notice and a hearing, upon showing that unsecured credit unobtainable); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

31.     The NM Lender proposed the post-petition financing facility with the best available terms and conditions under the circumstances, which address the Debtors' working capital needs and permits the Debtors to complete a sale of Anchor Drilling's assets. Given the exigencies of the Debtors' cases, it is unlikely that another entity would be willing to provide financing on any

Trustee's Emergency Motion for Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 and 507, (i) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and  (vii) Granting Related Relief
Page | 16

better terms, particularly in light of the Debtors' existing capital structure. Post-petition financing is not otherwise available without granting, pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness and obligations with the security interests in and the liens upon the Prepetition ABL Collateral pursuant to section 364(c) and (d) of the Bankruptcy Code (in each case subject to the Permitted Prior Liens) ("**NM Collateral**"). The Trustee is unable to obtain the necessary post-petition financing that the Debtors' require on terms more favorable than those provided by the NM Facility. Accordingly, the Trustee's determinations satisfy the statutory requirements of section 364(c) of the Bankruptcy Code.

### III.     The NM Facility Is Necessary to Maintain the Debtors' Business Operations in These Cases.

32.     The NM Facility, if approved, will provide essential working capital, allowing the Debtors to maintain the value of their assets and their ongoing business operations while working towards a sale of assets in these Chapter 7 Cases.  In addition, the NM Facility will provide the Debtors' various constituencies, including employees, vendors, and service providers, with confidence in the Debtors' ability to maintain operations while working towards a sale transaction and maximizing value for all stakeholders.

33.     If the relief sought in this Motion is denied or delayed, the estates likely will experience immediate business disruptions, and the Trustee's ability to consummate a sale transaction and maximize value for the estates may be irreparably damaged.  Accordingly, the NM Facility is necessary to maximize value for the bankruptcy estates and inures to the benefit of

Trustee's Emergency Motion for Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 and 507, (i) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and (vii) Granting Related Relief                                                                                                                    Page | 17

creditors and all parties in interest.

### IV.   The Terms of the NM Facility Are Fair, Reasonable, and Adequate Under the Circumstances.

34.     In considering whether the terms of post-petition financing are fair and reasonable,

courts consider the terms in light of the relative circumstances of both the trustee and the potential

lender.  *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also*

*Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen*

*MacLean Oil Co.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (a trustee or debtor may have to enter into

hard bargains to acquire funds).  The appropriateness of a proposed financing facility should also

be considered in light of current market conditions.  *See Transcript of Record* at 740:4–6, *In re*

*Lyondell Chem. Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Feb. 27, 2009) ("[B]y reason of

present market conditions, as disappointing as the pricing terms are, I find the provisions

reasonable here and now.").

35.     The terms and conditions of the NM Facility were negotiated in good faith and at

arm's length among the parties, culminating in the NM Note that is designed to provide the Trustee

and the estates with essential working capital and maintain the bankruptcy estates' business

operations while working towards a sale of Anchor Drilling's assets.  Indeed, when viewed in its

totality, the NM Facility reflects the Trustee's exercise of prudent business judgment consistent

with his fiduciary duties and is supported by fair consideration.

### V.   The Consensual Priming of Liens Should be Approved.

36.     As previously mentioned, if a trustee is unable to obtain credit under the provisions

of section 364(c) alone, the trustee may obtain credit secured by a senior or equal lien on property

of the estate that is already subject to a lien, commonly referred to as a "priming lien."  11 U.S.C.

TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF                                                                       PAGE | 18

§ 364(d). To justify a priming lien, a trustee need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) and (d) of the Bankruptcy Code.  *See In re Snowshoe Co.*, 789 F.2d at 1088; *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992).  The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis.  *See In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996).  "Its application is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process."  *Id.* (quoting *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)).  Consent by a secured creditor to priming, however, obviates the need to show adequate protection.  *See Anchor Savs. Bank FSB*, 99 B.R. at 122 ("[B]y tacitly consenting to the superpriority lien, those [undersecured] creditors relieved the debtor of having to demonstrate that they were adequately protected.").

37.     The Prepetition ABL Credit Agreement Lender (who is the NM Lender), on behalf of the Prepetition ABL Secured Parties, agreed to the priming of its liens under the Prepetition ABL Credit Facility and is receiving adequate protection for the diminution in value of the Prepetition ABL Collateral. Accordingly, the consensual priming of the liens should be approved.

**VI.     Section 364(e) Protections Should Apply to the NM Facility.**

38.     The terms and conditions of the NM Facility are fair and reasonable, and were negotiated extensively by well-represented, independent parties in good faith and at arm's length. Accordingly, the Court should find that each of the NM Agent and the NM Lender is a "good faith" lender within the meaning of Bankruptcy Code section 364(e) and is entitled to all of the protections afforded by that section.

Trustee's Emergency Motion for Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 and 507, (i) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and  (vii) Granting Related Relief                                                                                                    Page | 19

**B. The Trustee's Request for Use of Cash Collateral and the Proposed Adequate Protection is Appropriate.**

39.     The Trustee's use of property of the estates is governed by section 363 of the Bankruptcy Code, which provides in pertinent part that:

> the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

40.     Pursuant to section 363(c)(2) of the Bankruptcy Code, the Court may authorize the Trustee to use cash collateral as long as the applicable secured creditors consent or are adequately protected.  *See In re McCormick*, 354 B.R. 246, 251 (Bankr. C D. Ill. 2006) (to use the cash collateral of a secured creditor, the debtor must have the consent of the secured creditor or must establish to the Court that the secured creditor's interest in the cash collateral is adequately protected).  "Cash Collateral" is defined as, "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest."  11 U.S.C. § 363(a).

41.     The Debtors have an urgent need for the immediate use of the Cash Collateral pending the final hearing on this Motion and seek to use Cash Collateral existing on or after the Petition Date in exchange for the adequate protection set forth in the Interim Order, to which the Prepetition ABL Agent, on behalf of the Prepetition ABL Secured Parties, has consented. The estates require the use of the Cash Collateral in order to effect the orderly continuation of the operation of their businesses, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, administer these Chapter 7 Cases, and to satisfy other working capital and operational needs. Because such use is essential to the

TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND  (VII) GRANTING RELATED RELIEF
PAGE | 20

preservation of the bankruptcy estates and the ABL Secured Parties have consented, the Court should approve the Trustee's use of Cash Collateral under section 363(c)(2) of the Bankruptcy Code.

## C.  Modification of the Automatic Stay on a Limited Basis is Warranted.

42.     The relief requested herein contemplates a modification of the automatic stay pursuant to Bankruptcy Code section 362 to the extent necessary to permit the NM Agent to obtain relief from the automatic stay imposed by section 362 on five (5) business days' notice of filing such motion with the Court and limit the determination at any such hearing on the NM Agent's motion for relief from the automatic stay to the determination of whether an event of default has occurred under the NM Facility.

43.     Stay modification provisions of this sort are ordinary and usual features of debtor in possession financing facilities and, in the Trustee's business judgment, are reasonable under the present circumstances.  Accordingly, the Court should modify the automatic stay to the extent contemplated by the proposed Interim Order.

## D.  Interim Approval and Scheduling of Final Hearing.

44.     As set forth above, Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code or to obtain credit under section 364 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and to authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

Trustee's Emergency Motion for Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 and 507, (i) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and  (vii) Granting Related Relief
Page | 21

45.     Absent relief on an interim basis pursuant to the Interim Order, the Trustee will be unable to satisfy the Debtors' immediate and projected payment obligations, including payroll and other operating expenses. Given the immediate and irreparable harm to be suffered by the Debtors' estates absent interim relief, the Trustee respectfully request that the Court schedule and conduct a preliminary hearing on the Motion and (a) authorize the Debtors, from the entry of the Interim Order until the Final Hearing, to obtain credit under the terms contained in the NM Note and to utilize Cash Collateral, and (b) schedule the Final Hearing.

46.     Pursuant to Bankruptcy Rule 4001(c), the Trustee requests that the Court set a date that is no later than thirty (30) days after the Petition Date as a final hearing for consideration of entry of the Final Order. The Trustee also requests that the Bankruptcy Court set an objection deadline to the entry of a Final Order by June 23, 2020, which objection shall be filed and served upon (i) McDowell Hetherington LLP, 1001 Fannin Street, Suite 2700, Houston, TX 77002, Attn: Jarrod B. Martin, as counsel to the Trustee, (ii) Reimer & Braunstein LLP, 100 Cambridge Street, 22nd Floor, Boston, MA 02114, Attn: Donald E. Rothman and Brendan C. Recupero and Kyung S. Lee PLLC, 4723 B Oakshire Drive, Houston, TX, attn.: Kyung S. Lee, as counsel to the Agent, (iii) Norton Rose Fullbright US LLP, 1301 Avenue of the Americas, New York, NY, Attn: Louis R. Strubeck, Jr., as counsel to HSBC.

47.     The Trustee requests that he be authorized to serve a copy of the signed Interim Order, which fixes a time and date for the filing of objections, if any, by first class mail and email delivery upon the parties listed below in the Notice section. The Trustee further requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001(c)(2).

Trustee's Emergency Motion for Entry of Interim and Final Orders pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 and 507, (i) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (ii) Granting Liens and Superpriority Administrative Expense Claims, (iii) Authorizing the Use of Cash Collateral, (iv) Granting Adequate Protection, (v) Modifying the Automatic Stay, (vi) Scheduling Final Hearing, and (vii) Granting Related Relief
Page | 22

## NOTICE

48.     Notice of this Motion shall be given to (a) the parties on the ECF service list, and (b) those parties required to be noticed pursuant to this Court's Order Restricting and Limiting Notice, dated as of May 28, 2020. The Trustee submits that no other or further notice need be provided.

WHEREFORE, the Trustee respectfully requests that this Court enter the Interim Order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: June 3, 2020

Respectfully submitted,

McDowell Hetherington LLP

By:   /s/ *Jarrod B. Martin*
       Jarrod B. Martin
       Texas Bar No. 24070221
       1001 Fannin Street
       Suite 2700
       Houston, TX 77002
       P: 713-337-5580
       F: 713-337-8850
       E: Jarrod.Martin@mhllp.com

       ***Attorneys for Christopher Murray,
       Chapter 7 Trustee***

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 3, 2020 a true and correct copy of the foregoing Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system. The undersigned further certifies that the foregoing Motion was served via first-class mail on the parties listed Master Service List and the Supplement Service List by no later than the following business day.

*/s/ Jarrod B. Martin*
Jarrod B. Martin


## BLR 9013-1(I) CERTIFICATE

Pursuant to BLR 9013-1(i), I hereby certify that the information contained in the foregoing document with respect to the need for emergency relief is true and correct to the best of my knowledge.

*/s/ Jarrod B. Martin*
Jarrod B. Martin

**EXHIBIT A**
Proposed Interim Order
(see attached)

## EXHIBIT B

NM Note

(see attached)