IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| Q'MAX AMERICA, INC., *et al* [1] | § | Case No. 20-60030-CML |
| | § | |
| Debtors. | § | Jointly Administered |

**RESPONSE TO OBJECTION TO TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506 AND 507, (I) AUTHORIZING THE TRUSTEE TO OBTAIN SECURED PRIMING POST-PETITION FINANCING, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRAITVE EXPENSE CLAIMS, (III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, (VI) SCHEDULING FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Christopher Murray, the duly appointed trustee ("**Trustee**") for the chapter 7 estates of Anchor Drilling Fluids USA, LLC ("**Anchor Drilling**") and Q'Max America Inc. ("**Q'Max America**" and together with Anchor Drilling, each a "**Debtor**" and collectively, the "**Debtors**"), submits this *Response to the Objection to Trustee's Emergency Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, and 507, (I) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling Final Hearing, and (VII) Granting Related Relief* ("**Objection**") [Doc. No. 135] submitted by Tiger Calcium ("**Tiger**"). In support of this Response, the Trustee respectfully represents as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Q'Max America Inc. (2319) and Anchor Drilling Fluids USA, LLC (5395).

**PRELIMINARY STATEMENT**

Tiger's objection asserts that the NM Facility (a) is not in the best interests of the Debtors' estates or the general unsecured creditors, (b) contains unnecessary conditions and provisions that are not supported by the Bankruptcy Code, and (c) all but guarantees that the Debtors' estates will be rendered administratively insolvent.  The assertions in the Objection are not supported by fact or applicable law and the Objection should be overruled by this Court. **First**, the test is not a best interests of creditors test, it is a business judgment analysis. The Trustee's testimony at the initial hearing demonstrates this business judgment. **Second**, the conditions and provisions requested are regularly approved by courts in this jurisdiction. **Third**, the Trustee has already received sufficient unencumbered funds so that, to the best of his knowledge, the estates are not administratively insolvent.

**BACKGROUND**

1. On May 24, 2020 ("**Petition Date**"), both Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code ("**Chapter 7 Cases**") with the United States Bankruptcy Court for the Southern District of Texas, Victoria Division ("**Court**").

2. On or about May 24, 2020, the United States Trustee appointed the Trustee as the duly qualified trustee over the chapter 7 estates of the Debtors.

3. On May 28, 2020, the Court entered an *Order Granting Trustee's Emergency Motion to: (1) Continue Operation of Business; (2) Use of Cash Collateral with Consent on an Interim Basis; and (3) Maintain Cash Management System* ("**Order to Operate**") [Doc. No. 43]. Pursuant to the Order to Operate, the Court authorized the Trustee to operate the Debtors' regional business that includes, among other things, (i) providing drilling and completion fluids, chemical additives, solids control services and equipment, waste management services and equipment, fluid

engineering services and other products and services in the northeastern United States and (ii) providing solids control services and equipment in the Permian basin, in support of oil and gas drilling (collectively, "**Regional Business**") through June 10, 2020 in order to, among other things, preserve the value of the Debtors' assets as the Trustee pursued a sale of the Regional Business (excluding the business in the Permian basin).

4.      On June 3, 2020, the Trustee filed his *Emergency Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, and 507, (I) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling Final Hearing, and (VII) Granting Related Relief* ("**Financing Motion**") [Doc. No. 70].

5.      On June 3, 2020, the Trustee also filed his *Emergency Motion Pursuant to 11 U.S.C. §§ 105(a), 363, 365, 503 and 507 and Bankruptcy Rules 2002, 6004, 6006 and 9014 for Entry of an Order (I)(A) Approving Bid Procedures for Sale of Debtor's Assets, (B) Approving Entry into Staking Horse Asset Purchase Agreement and Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Debtors' Assets, (D) Approving the Form and Manner of the Notice of the Sale, Auction and the Sale Hearing, (E) Approving Certain Procedures Related to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale and (II)(A) Approving the Stalking Horse Asset Purchase Agreement or Other Purchase Agreement Submitted by Successful Bidder, (B) Approving Sale of Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (C) Authorizing the Assumption and Assignment of Certain Executory Contacts and Interests in Unexpired Leases in Connection with the Sale, and (D) Granting Related Relief* ("**Sale Motion**") [Doc. No. 74].  Pursuant to the Sale

Motion, the Trustee seeks, among other things, authorization and approval to sell the Regional Business ("**Sale Transaction**").

6. On June 5, 2020, the Court entered a *Second Order Granting Trustee's Emergency Motion to Continue Operation of Business* ("**Second Order to Operate**") [Doc. No. 93]. Pursuant to the Second Order to Operate, the Court authorized and approved a further extension of the Trustee's operation of the Regional Business through July 5, 2020 to close the Sale Transaction.

7. On June 5, 2020, the Court entered the *Agreed Order Granting Trustee's Emergency Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, 506, and 507, (I) Authorizing the Trustee to Obtain Secured Priming Post-Petition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling Final Hearing, and (VII) Granting Related Relief* ("**Interim Order**")[2] [Doc. No. 94]. Pursuant to the Interim Order, the Court, after hearing the Trustee's testimony in Court, authorized the Trustee to obtain post-petition financing from the NM Lenders and to use Cash Collateral in accordance with, and subject to, the Budget.

## DISCUSSION

8. The Objection asserts, *inter alia*, that the NM Facility (a) is not in the best interests of the Debtors' estates or the general unsecured creditors, (b) contains unnecessary conditions and provisions that are not supported by the Bankruptcy Code, and (c) all but guarantees that the Debtors' estates will be rendered administratively insolvent. The assertions in the Objection are not supported by fact or applicable law and the Objection should be overruled by this Court.

**I.    The Trustee Exercised his Business Judgment in Entering Into the NM Facility.**

---

[2] Unless otherwise noted all terms used herein shall have the same meaning as in the Interim Order [Doc. No. 96].

9.  Tiger alleges that the NM Facility and the related relief are not in the best interests of the Debtors estates or their general unsecured creditors. Contrary to the "best interests" standard asserted by Tiger, a trustee's decision to enter into a postpetition lending facility under section 364 of the Bankruptcy Code is governed by the business judgment standard. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

10. The record presented to the Court at the Interim Hearing sufficiently support this Court's findings that terms of the NM Financing and use of Cash Collateral reflect the Trustee's exercise of prudent business judgment consistent with his fiduciary duties. Moreover, the record presented to the Court in connection with the entry of the Order to Operate and the Second Order to Operate further support the Trustee's decision to continue to operate the Regional Business and proceed with the relief sought in the Sale Motion and the Financing Motion.

11. One of the overarching goals of bankruptcy is to prevent the Debtors from going into liquidation with the attendant chaos and loss of jobs. Since the Debtors filed their cases under chapter 7 of the Bankruptcy Code, such chaos and loss of jobs was a likely outcome. The Trustee, in the exercise of his prudent business judgment, determined that there are benefits to the Debtors' estates by funding operations of the Regional Business to pursue a sale of the Regional Business. Such benefits include, among other things, the preservation of jobs and the continued payment of vendors in connection with the Regional Business. The NM Facility also permits an orderly wind-down and completion of certain projects that, absent completion, would result in potential setoff claims against the Debtors' estates and diminish recoveries for many stakeholders.

12. While asserting that the NM Facility is not in the best interest of the Debtors' estates or their general unsecured creditors, Tiger fails to offer any preferable alternative to the NM Facility and contemplated Sale Transaction and further ignores the stark reality of a liquidation

under chapter 7 of Bankruptcy Code. Thus, the NM Facility and contemplated Sale Transaction are in fact in the best interests of the Debtors' estates.

## II. The NM Facility Contains Postpetition Financing Conditions and Provisions Approved by Bankruptcy Courts.

13. Although financing facilities are not present in most chapter 7 bankruptcy cases, the financing provisions that Tiger takes specific issue with are frequently approved by bankruptcy courts and were the subject of arms-length negotiation between the Trustee and the NM Lenders and the result of Trustee's prudent business judgment.

14. More specifically, Tiger takes issue with the proposed refinancing of the Prepetition ABL Obligations under the NM Facility and the proposed Final Order. Courts in this district have approved, however, similar roll-ups in other cases. *See, e.g., In re Legacy Reserves Inc.*, No. 19-33395 (MI) (Bankr. S.D. Tex. July 23, 2019) [Docket No. 255]; *In re Gastar Exploration, Inc.*, No. 18-36507 (MI) (Bankr. S.D. Tex. Nov. 26, 2018) [Docket No. 213]; *In re Shoreline Energy LLC*, No. 16-35571 (DRJ) (Bankr. S.D. Tex. Dec. 16, 2016) [Docket No. 190].

15. Further, liens on avoidance actions are not unusual, especially when limited like in this context (the liens only apply to avoidance actions being sold to the purchaser, which specifically relate to the Regional Business). *See, e.g.*, *In re Sandridge Energy, Inc.*, No. 16 32488 (DRJ) (Bankr. S.D. Tex. July 5, 2016) (overruling objection while granting adequate protection claims on the proceeds of avoidance actions); *In re Goodrich Petrol. Corp.*, No. 16- 31975 (MI) (Bankr. S.D. Tex. June 6, 2016) (granting adequate protection liens and superpriority claims on proceeds of avoidance actions); *In re Sherwin Alumina Co., LLC*, No. 16 20012 (DRJ) (Bankr. S.D. Tex. Mar. 16, 2016) (overruling objection while granting adequate protection liens and superpriority claims on proceeds of avoidance actions); *In re RAAM Global Energy Co.*, No. 15-35615 (MI) (Bankr. S.D. Tex. Dec. 12, 2015) (granting adequate protection liens and superpriority

claims on proceeds of avoidance actions).

16. Moreover, the Trustee would note that there is no requirement that a lender consent to the use of any funds it has loaned to the Trustee (or funds upon which it has a lien) to investigate potential claims and causes of action against itself. Second, the length of the challenge period is appropriate. The Trustee's investigation professionals simply do not require a longer period of time.

17. One such example of the arms-length negotiations is the inclusion of causes of action against vendors with ongoing business with the Regional Business that are included in and part of the Sale Transaction. Accordingly, the NM Superpriority Claims recourse to Avoidance Actions are similarly limited solely to such causes of action against vendors with ongoing business with the Regional Business. The Objection ignores the limited recourse to the specified Avoidance Actions and that the remaining Avoidance Actions shall be retained by the Debtors' estates and are not subject to a potential NM Superpriority Claims.

18. Similarly, the concept of challenge periods are nothing new to postpetition financing. Notwithstanding the Challenge Period Expiration Date of July 2, 2020 in the Interim Order, the Trustee has completed his analysis of the liens and claims of the Prepetition ABL Secured Parties and further states that there are no grounds or cause to bring a Challenge Proceeding.

### III. The NM Facility Provided for the Payment of Administrative Expenses

19. Tiger incorrectly contends, without any supporting evidence and contrary to the actual facts, that the NM Facility all but guarantees that the Debtors' estates will become administratively insolvent. Such bald assertions patently ignore the Budget and the provision for the payment of, among other things, the Debtors' administrative expenses prior to closing on the

anticipated Sale Transaction.  The NM Lenders have also prefunded a total of $800,000 (with the balance to be funded on or before June 29) of the Trustee's fees and expenses through closing on the anticipated Sale Transaction, with the balance to be paid prior to subject to orders of this Court authorizing and approving compensation of the Trustee and his professional. Accordingly, Tiger's assertion that the NM Facility and Sale Transaction renders the Debtors' estates administratively insolvent fails.

20. The Objection also alleges, without any support, that the NM Facility and Sale Transaction damage the Debtors' estates and their unsecured creditors.  More specifically, Tiger takes issue with the bid procedures and the ability of the secured creditors to credit bid. Presumably, Tiger's concern is that if the secured lenders are allowed to credit bid their secured debt, there will be no portion of the purchase price paid in cash.  There is no requirement under the Bankruptcy Code that some portion of the purchase price must be paid in cash and allocated to the unsecured creditors.  Moreover, these are chapter 7 cases where it is common that creditors may go unpaid.  No creditor is worse off than they were as of the petition date, and in fact many are better off.  *See, e.g.*, *Trustee's Emergency Motion for the Entry of an Order (I) Authorizing the Payment of Claims or Critical Vendors, and Certain Other Specified Trade Claimants, and (II) Granting Related Relief* [Doc. No. 133].

21. Tiger does not provide nor is there another viable option available to the Trustee to preserve value for stakeholders in the absence of the NM Facility and proposed Sale Transaction. The proposed Sale Transaction is a much better outcome for the Debtors and their estates as it preserves jobs and the Regional Business for creditors going forward, removes all of the Prepetition ABL Secured Parties' claims as well as the full amount of the NM Facility through their assumption by the purchaser at closing on the proposed Sale Transaction, all of which would

have not been possible in the absence of the NM Facility.

22. The Trustee further recognizes the overarching need for a prompt sale of the Regional Business and further submits that the evidence offered in support of the Financing Motion and the Sale Motion, including the bid procedures and case milestones for the Sale Transaction, establish that the agreed terms were the subject of the Trustee's prudent business judgment and consistent with this Court's findings in connection with the prior entry of the Order to Operate and the Second Order to Operate. Accordingly, the Objection must be overruled.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that this Court overrule the Objection to the proposed final postpetition financing order.

Dated: June 18, 2020

Respectfully submitted,

CHAMBERLAIN HRDLICKA

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F: 713.658.2553
E: jarrod.martin@chamberlainlaw.com

*Proposed Counsel for Christopher R. Murray Chapter 7 Trustee*

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on June 18, 2020, a true and correct copy of the foregoing Notice was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system and by first class mail via the attached service list.

                                                */s/ Jarrod B. Martin*
                                                Jarrod B. Martin