# Exhibit 1

# NEWMARK

## EXCLUSIVE LISTING AGREEMENT

On this 15th day of February, 2022, Christopher R. Murray, in his capacity as Chapter 7 Trustee for the bankruptcy estates of Q'Max America, Inc. and Anchor Drilling Fluids USA, LLC pursuant to In re: Q'Max America, Inc., et. al., Case No. 20-60030, United States Bankruptcy Court for the Southern District of Texas, Victoria Division, ("Client") hereby grants to Newmark Real Estate of Houston, LLC, a Texas limited liability company doing business as Newmark ("Newmark"), the exclusive right to negotiate the sale of the real property described below (the "Portfolio") for a period commencing on February 15, 2022 and ending at 11:59 p.m. on August 11, 2022 (the "Listing Period"), unless this "Exclusive Listing Agreement" (the "Agreement") is extended in a writing signed by both Client and Newmark. This Agreement and Client's obligations hereunder are subject to approval of the United States Bankruptcy Court.

**1. THE PROPERTY.** The "Portfolio" consists of multiple parcels as described on Exhibit A (as used herein, "Property" means each individual property which makes up the Portfolio).

**2. SALE TERMS.** The price and terms of the sale of the Portfolio or any part thereof shall be as follows: on terms and conditions acceptable to Client in Client's sole discretion. Newmark understands and agrees that such terms may be subject to further approval by the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "Bankruptcy Court").

**3. NEWMARK'S DUTIES AND AUTHORITY.** Newmark represents and warrants that it is licensed as a real estate broker in the State of Texas, under license number 537005.

a. Newmark shall assign David Husid, whose real estate license is 599517, to act on Newmark's behalf in the performance of services under this Agreement ("Services") and shall dedicate such time and resources as are necessary to the performance of Newmark's obligations hereunder, and no other individual(s) shall be assigned to work on behalf of the Portfolio by Newmark absent Client's prior written consent.

Notwithstanding the foregoing, Client acknowledges and agrees that any services that must be performed by a licensed real estate broker and that are to be performed outside the State of Texas may be provided by one or more of Newmark's affiliates, which includes:

> All entities that are under common ownership with Newmark and that conduct business under the Newmark Knight Frank trade name or any derivation thereof, and all affiliates of such entities (each, a "Newmark Affiliate"), but shall not include the common owner or owners of Newmark and such entities, nor any subsidiaries or affiliates of such owner(s) that do not conduct business under the Newmark Knight Frank trade name or any derivation thereof;

> All entities that are members of the "licensee group" maintained by Newmark and that are each licensed by Newmark to use "Newmark" or "Newmark Knight Frank," or some derivation thereof, as part of its trade name (each, a "Newmark Licensee"); including those Newmark Licensees that operate in Latin America; and

> In the event any Services that must be performed by a licensed real estate broker are to be performed in a jurisdiction in which no Newmark Affiliate, or Newmark Licensee holds the required real estate license, or Newmark does not have the personnel to handle the assignment, or Client requests otherwise, Client acknowledges and agrees that Newmark may engage the services of qualified, licensed real estate broker in that jurisdiction (a "Local Broker") to perform, or assist Newmark in the performance of, such services.

> In the event any Services that must be performed by a licensed real estate broker are to be performed by a Newmark Affiliate, Newmark Licensee, or a Local Broker:

> Newmark shall notify Client thereof;

Client's Initials: 

Newmark shall obtain Client's prior written approval with regard to any Newmark Affiliate, Newmark Licensee, or Local Broker, which consent may be granted or withheld by Client in its sole and absolute discretion;

Newmark shall oversee and supervise, and by vicariously liable for, the conduct of each Newmark Affiliate, Newmark Licensee, or Local Broker in performing those Services and shall ensure that such Services are performed in accordance with all applicable provisions of this Agreement and all applicable laws, regulations and other legal requirements; and

Newmark shall be solely responsible for compensating the Newmark Affiliate, Newmark Licensee, or Local Broker for the Services provided thereby.

b.  Newmark is authorized to advertise the Portfolio and shall have the exclusive right to place a sign or signs on the Property if, in Newmark's opinion, such would facilitate the sale thereof, including by or through the Local Broker.

c.  Newmark is authorized to publicize any transactions that occur involving the Portfolio under this Agreement. Newmark shall have the right to name the parties to the transaction and the character and location of the Property, but shall not disclose any financial aspects of the transaction without Client's prior written consent, which Client may grant or withhold in its sole and absolute discretion.

d.  **Duty to Sell**.  Newmark shall exercise best efforts to market the Portfolio for sale, subject to the terms, conditions and limitations of this Agreement, and shall actively solicit and procure purchasers for the Portfolio using accepted and appropriate methods for such activities.  Without in any way limiting the foregoing, Newmark's duties shall include the following:

   i.  <u>Signage.</u>  Subject to (A) the prior review and approval by Client as to form, content, location and expense thereof, and (B) all applicable law, building rules and regulations, Newmark shall prepare, maintain and install, signage advertising space "For Sale" in each Property. At Client's request, Newmark shall remove any such signage in a safe and lawful manner, shall repair any damage caused by such removal, and shall restore the Property to its condition existing prior to the installation of such signage.

   ii.  <u>Proposals.</u>  Newmark shall prepare all sale proposals and letters of intent and assist in the negotiation of letters of intent.

   iii.  <u>Co-Brokers.</u>  To cooperate fully with all other brokers who are duly licensed to do business within the jurisdiction in which the Property is located (hereinafter "**Co-Brokers**"), and upon receipt of payment of Commissions from Client to promptly distribute any fees or commissions due to any and all Co-Brokers. The terms and conditions of all agreements of co-brokerage shall be disclosed in writing to Client, and shall be consistent with market standard.

   iv.  <u>Compliance with Laws.</u>  To at all times comply with any and all federal, state, county and municipal statutes, ordinances, codes and regulations, including but not limited to, any such legal requirements pertaining to non-discrimination against, or segregation of, any person or group of persons, on account of race, color, creed, religion, age, gender, sexual orientation, marital status, national origin, or ancestry, in the leasing, subleasing, transferring, use or occupancy of all or any portion of the Portfolio.

e.  **Standard of Care.**  In the performance of its duties and obligations under this Agreement, Newmark shall perform diligently and in good faith.

f.  **Insurance.** Newmark agrees to carry at its own expense the following types of insurance: (a) commercial general liability insurance, including coverage for bodily injury, property damage, personal injury and contractual liability, on an occurrence basis, with a limit of $1,000,000 per occurrence and $3,000,000 general aggregate; and (b) business automobile liability covering all owned, non-owned and hired vehicles with a combined single limit of $1,000,000. Client shall have no responsibility for providing workmen's compensation insurance or any other type of insurance for the employees or agents of Newmark who are engaged in the performance of this Agreement.

Client's Initials: 

Newmark hereby agrees to obtain all necessary workmen's compensation insurance and other insurance required for its employees and agents. A certificate evidencing such insurance issued by a reputable insurance carrier reasonably acceptable to Client shall be delivered to the Client within 30 days after the date hereof and as to replacement certificates not later than 30 days prior to the date on which such insurance would otherwise have expired but for the renewal set forth in such replacement certificate. Such insurance shall provide that the insurer shall endeavor to give thirty (30) days advance written notice to Newmark of any modification, cancellation or termination, which Newmark shall promptly forward to Client. Newmark acknowledges that it is an independent contractor and not an employee of Client. All policies of insurance shall be issued by insurers having a rating of A-, Category VII or better in the most recent edition of Best's Key Rating Guide. Newmark further agrees to reimburse Client for court costs and other reasonable expenses, including attorneys' fees, incurred by Client in defending any action brought against Client for injury or damage claimed to have been suffered as a result of or in any way connected with Newmark's negligence or willful act or that of its officers, directors, agents and employees or otherwise arising by reason of the failure of Newmark to perform its responsibilities pursuant to this Agreement. Client shall be included as an additional insured under Newmark's commercial general liability and business automobile liability insurance, solely with regard to claims arising out of Newmark's negligent or more culpable acts or omissions under this Agreement. The provisions of this Section shall survive the termination of this Agreement.

g. **Duties upon Expiration or Termination.** Upon the expiration or earlier termination of this Agreement, Newmark shall:

   i. Promptly remove all signage on or about the Portfolio which contains Newmark's name or corporate logo, repair any damage caused by such removal, and restore the Portfolio to its condition existing prior to the installation of such signage at Newmark's expense;

   ii. Promptly return to Client any and all written materials regarding the Property, the Client, and the Client's affiliates; and

   iii. During the thirty (30) days subsequent to the expiration of this Agreement, or during the thirty (30) days subsequent to Client's notice of early termination of this Agreement, Newmark shall have the right to submit to Client the Registration List (defined in Section 6(B) below).

4. **LIMITATION OF NEWMARK'S AGENCY**. The parties acknowledge and agree that this Agreement is no more than a mere authority to solicit for offer from prospective purchasers which are to be submitted to Client for its approval and acceptance. Newmark is an independent entity and not the general agent of Client. Newmark has no authority to enter into any agreement with a prospective purchaser or any other person or entity in the name of or on behalf of Client and has no authority by virtue of this Agreement to bind or subject Client to any obligations or liabilities whatsoever. Client has the absolute right (in its sole and absolute discretion) in all events to approve or to disapprove the form, substance and content of any and all proposals, agreements and contracts, including, without limitation, the form and substance of all marketing materials and the pricing, and marketing and terms of a sale of the Property. No written proposal, offer or information concerning the Portfolio shall be distributed without Client's prior consent (in its sole and absolute discretion). Client reserves the right to adjust the terms and conditions of any offer, including, but not limited to, the right to adjust the offering price for the Portfolio upward or downward from time to time and the right to withdraw from negotiations or decline to enter into any agreement or contract, for any reason or for no reason whatsoever, at any time and without liability or obligation to Newmark or any other broker, agent or finder. Any offer received shall be subject to the final approval of Client. In response to any inquiry regarding Newmark's authority, Newmark shall expressly inform each prospective purchaser or other party of Newmark's inability to bind Client. Newmark shall not represent that it is acting for Client in any capacity other than as Client's real estate broker.

5. **CLIENT'S DUTIES AND REPRESENTATIONS.** Client agrees to cooperate with Newmark in effecting a sale of the Portfolio or any part thereof and immediately to refer to Newmark all inquiries of any person or entity interested in purchasing any Property. All negotiations are to be through Newmark. Client agrees to pay all customary escrow, title and revenue charges, to furnish good title to and execute

Client's Initials: *CRM*

Page 3 of 9

4374561.10

and deliver such documents as may be necessary to effect a sale of each Property. Client understands that it is illegal for either Client or Newmark to refuse to present or sell real property to any person because of race, color, religion, national origin, sex, marital status, age or physical disability.

**6.    DISCLAIMER.** Client acknowledges that Newmark has not made an independent investigation or determination of the physical or environmental condition or adequacy of the Portfolio, including, but not limited to, the size or value of any Property, the existence or nonexistence of any underground tanks, sumps, piping, toxic or hazardous substances on any Property. Client agrees that it will rely solely upon its own investigation and/or the investigation of professionals retained by Client, at Client's sole expense, and Client shall not rely upon Newmark to determine the physical and environmental condition of the Property or to determine whether, to what extent or in what manner, such condition must be disclosed to potential purchasers or other interested parties.

Client acknowledges that Newmark has no specific expertise with respect to the environmental assessment or physical condition of the Property, including, but not limited to, matters relating to: (i) problems which may be posed by the presence or disposal of hazardous or toxic substances on or from the Portfolio, (ii) problems which may be posed by any Property being within a HUD Flood Zone as set forth in the U.S. Department of Housing and Urban Development "Special Flood Zone Area Maps," as applicable.

**7.    NEWMARK'S COMPENSATION**

**A.    Amount of Commission**. In consideration of this Agreement and Newmark's agreement to diligently pursue the procurement of a purchaser of the Portfolio or any part thereof, Client agrees to pay Newmark a real estate commission (a "Commission") in cash for the sale of each Property, as defined on Exhibit B. The Commission(s) shall be paid in lawful money of the United States and shall be paid only in the event of a Sale of a Property. As used herein, a "Sale" of a Property means the closing of the sale of such Property which is approved by Client to a third party purchaser and which is consummated either (i) on or before the Termination Date or (ii) by a Prospect on or before the Cutoff Date.

**B.    Payment Obligations**

**(1)**    Client shall pay a Commission to Newmark if, during the Listing Period any of the following occurs: a Sale of a Property to a purchaser by or through Newmark, Client or any other person or entity;.

**(2)**    Client shall also pay a Commission to Newmark if within ninety (90) days after the Termination Date (such date, the "Cutoff Date"): (a) a Property is sold to any person or entity which during the term of the Listing Period made a written offer to purchase the Property, whether or not such transaction is consummated on the same or different terms and conditions contained in such offer; or (b) a Property is sold to any person or entity with whom Newmark has negotiated or to whom Newmark has submitted the Property in an effort to effect a sale during the Listing Period and whose name appears on any list of such persons or entities (the "Registration List") which Newmark shall have delivered to Client at the address below stated within thirty (30) days following such expiration. The persons or entities described in subsections (a) and (b) of this paragraph are referred to collectively as "Prospects" and individually as a "Prospect."

**8.    INDEPENDENT ADVICE AND ADMONITIONS.** Client hereby acknowledges that neither Newmark nor any salesperson associated with Newmark is qualified or authorized to give legal or tax advice, nor to determine if Client desires to needs such advice. Client agrees to consult with an attorney or accountant.

**9.    RELEASE AND INDEMNIFICATION**

**A.**    Subject to Newmark's indemnification obligations set forth in Section 9(B), Client releases Newmark of and from any and all losses, claims, causes of action, liabilities and damages arising out of or connected with the physical or environmental condition, size or value of each Property, conditions of title, zoning, accuracy or completeness of reports, or permitted uses. Client shall defend, indemnify, and hold Newmark harmless from and against any and all losses, claims, causes of action, liabilities and damages (including, but not limited to, reasonable attorneys' fees and costs), arising out of the willful misconduct or gross negligence of Client.

Client's Initials: CKM

**B.** Newmark shall defend, indemnify, and hold Client harmless from and against any and all losses, claims, causes of action, liabilities and damages (including, but not limited to, reasonable attorneys' fees and costs) arising out of or in connection with (a) any claim by another broker (including, without limitation, any cooperating broker) for the payment of a real estate commission that Newmark has agreed, in writing, to pay to such other broker; provided, however, that the foregoing shall be applicable only if and to the extent Newmark has been paid the applicable Commission by Client, if any; (b) any misrepresentations made by Newmark and any alleged contract, agreement or negotiation entered into by or which is alleged to have taken place with Newmark and not Client, (c) any negligence or willful misconduct of Newmark, or its agents, employees or representatives, and/or (d) any breach of Newmark's obligations under this Agreement.

**10. LIABILITY.** The liability of the parties caused by a breach of this Agreement shall be limited to direct damages, and in no event will either party be liable to the other for any loss of or damage to revenues, profits, goodwill or other special, incidental, exemplary, punitive, indirect, or consequential damages of any kind resulting from the performance or failure to perform pursuant to the terms of this Agreement or from the provision of services hereunder, even if such party has been advised of the possibility of such damages.

**11. SUCCESSORS AND ASSIGNS; NO ASSIGNMENT.** The successors and assigns of the parties hereto are duly bound by the provisions hereof. Notwithstanding the foregoing, Newmark shall not assign this Agreement or any of the rights, duties or benefits hereunder without Client's prior written consent.

**12. AMENDMENTS AND MODIFICATIONS.** No amendments to, modifications of, or termination of, this Agreement shall be valid or binding unless made in writing and signed by both Client and an officer of Newmark and approved by the Bankruptcy Court.

**13. COSTS AND ATTORNEYS' FEES.** In the event it is necessary for either party to retain an attorney to file suit to enforce the provisions hereof or resolve any dispute regarding the obligations, liabilities or rights of any party regarding commissions payable hereunder, the prevailing party shall be entitled to its costs and attorneys' fees in any legal action regarding the collection of a commission due hereunder.

**14. OMITTED**.

**15. GOVERNING LAW**. This Agreement shall be governed and construed in accordance with the laws of the State where the Property is located, without reference to rules regarding conflicts of laws.

**16. COMPLIANCE WITH LAWS.** Each party shall comply with all laws and regulations of the State where the Property is located and the United States of America in the course of performing under this Agreement.

**17. SEVERABILITY.** If any court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable, such provision shall be interpreted to the maximum extent to which it is valid and enforceable, all as determined by such court in such action, and the remaining provisions of this Agreement shall, nevertheless, continue in full force and effect without being impaired or invalidated in any way.

**18. TITLES AND CAPTIONS**. Titles or captions contained in this Agreement are inserted as a matter of convenience and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.

**19. NO THIRD PARTY BENEFICIARIES**. Nothing in this Agreement is intended to, nor shall it be deemed or construed to create any rights or remedies in any third party. The parties acknowledge and agree that there are no third party beneficiaries to this Agreement.

**20. INDEPENDENT CONTRACTORS**. The parties are independent contractors, and no general agency, partnership, joint venture, or employee-employer relationship is intended or created by this Agreement. Neither party shall have the power to obligate or bind the other party.

Client's Initials: CRM

21. **NOTICE**. Except where provided otherwise, notices under this Agreement shall be in writing and shall be deemed to have been fully given and received when delivered by e-mail, or by hand, or sent by nationally recognized overnight courier, and properly addressed to the respective party at the following addresses:

> If to Client:  Christopher R. Murray
> Chapter 7 Trustee for the bankruptcy estates of
> Q'Max America, Inc. and Anchor Drilling Fluids USA, LLC
> Jones Murray & Beatty LLP
> 4119 Montrose Blvd., Suite 230
> Houston, Texas 77006
> Email: christopher.murray@jmbllp.com
>
> With a copy, which shall not constitute notice, to:
>
> Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C.
> 1200 Smith Street
> 14th Floor
> Houston, Texas 77002
> Attn.: Jarrod B. Martin, Esq.
> Email: jarrod.martin@chamberlainlaw.com
>
> If to Newmark:  Newmark Real Estate of Houston, LLC
> 1700 Post Oak Blvd., 2 BLVD Place, Suite 250
> Houston, Texas 77056
> Attn.: David Husid
> Email: david.husid@nmrk.com
>
> With a copy to:
>
> Newmark
> 19700 Fairchild, Suite 300
> Irvine, California 92612
> Attn:    Legal Department

22. **WAIVERS**. A waiver of any right under any provision of this Agreement by either party shall be valid only if such waiver is in writing and signed by the party to be charged. No waiver of any right under any provision of this Agreement on any occasion shall be a waiver of any other right or under any other provision or on any other occasion. No extension of time for performance of any obligation or act shall be deemed an extension of the time for performance of any other obligation or act.

23. **INTERPRETATION**. No provision in this Agreement is to be interpreted for or against any party because that party or that party's legal representative drafted such provision.

24. **COUNTERPARTS**. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall be taken together and deemed to be one instrument.

25. **ENTIRE AGREEMENT.** This Agreement, together with all related exhibits, schedules, and attachments hereto constitute the entire understanding and agreement between the parties with respect to the subject matter hereof and supersedes any and all prior or contemporaneous oral or written communications with respect hereto, all of which are merged in this Agreement. Neither party is relying on any warranties, representations, assurances, or inducements not expressly set forth in this Agreement.

26. **CLIENT'S ACKNOWLEDGMENT**. Client acknowledges receipt of a copy of this Agreement, which Client has read and understands.

27. **OTHER TERMS AND CONDITIONS**

Client's Initials: *CRM*

☐ None.

X As follows:

**TERM OF THE LISTING AGREEMENT.**

Notwithstanding the foregoing, this Agreement shall earlier terminate: (a) upon thirty (30) days' prior written notice by either party; (b) upon the sale of the Portfolio, or as to any Property, immediately upon Client's sale of such Property; (c) immediately upon Client giving written notice to Newmark, in the event of Newmark's failure or refusal to duly perform and observe each and every term, condition and covenant contained herein, or in the event Newmark has acted or purported to act outside the scope of the limited authority granted to Newmark hereunder, or if Client has a good faith reason to believe that Newmark has committed fraud, misconduct, unethical or illegal activities, or has in any way acted in a manner detrimental or contrary to the economic and efficient operation of the Portfolio; or (d) if so ordered by the Bankruptcy Court.

As used herein, the "Termination Date" means the date on which this Listing Agreement expires or is terminated pursuant to this Section 27.

| CLIENT: | Newmark: |
|---|---|
| Christopher R. Murray, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Q'Max America, Inc. | Newmark Real Estate of Houston, LLC a Texas limited liability company |
| By: *Christopher R. Murray* <br> Christopher R. Murray, Trustee | By: *Arispah Elise Hogan* <br> Name: Arispah Elise Hogan |
| Christopher R. Murray, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of Anchor Drilling Fluids USA, LLC | Its: Executive Managing Director <br> February 15, 2022 |
| By: *Christopher R. Murray* <br> Christopher R. Murray, Trustee | |

Client's Initials: CRM

Page 7 of 9
4374561.10

Exhibit A

| Address | City | State |
|---|---|---|
| 2259 County Street | Chickasha | Oklahoma |
| 4402 S Mockingbird Road | Chickasha | Oklahoma |
| 504 East Oklahoma Avenue | Woodward | Oklahoma |
| 19626 Highway 152 | Sayre | Oklahoma |
| 2984 North Wingate Avenue | Odessa | Texas |
| Highway 18 and Utah Street | Jal | New Mexico |

Client's Initials: CRM

Page 8 of 9

4374561.10

Exhibit B

**Sales**

The Commission will be owed to Newmark and payable upon the closing of the Sale of a Property as follows:

Direct (buyer is not represented by a broker): four percent (4%) of the gross sales price of the Property.

Co-op (purchaser is represented by a broker): six percent (6%) of the gross sales price of the Property; provided that in no event will Newmark be required to share more than three percent (3%) of the gross sales price with the buyer's broker.

Client's Initials: CRM