IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| Q'MAX AMERICA, INC., *et al.*,[1] | § | Case No. 20-60030-CML |
| | § | |
| Debtors | § | Jointly Administered |

## MOTION TO COMPROMISE

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE CHRISTOPHER M. LOPEZ, UNITED STATES BANKRUPTCY JUDGE:**

Christopher R. Murray, as the chapter 7 trustee ("**Trustee**") for the above-captioned debtors Q'Max America, Inc. ("**QAI**") and Anchor Drilling Fluids USA, LLC ("**Anchor**," and with QAI, the "**Debtors**"), states as follows in support of this motion ("**Motion**"):

### RELIEF REQUESTED

1. The Trustee seeks entry of an order (the "**Order**"):

    a. approving the Termination and Release Agreement Regarding Q'Max Transition Services Agreement, which includes a settlement and mutual release between the parties ("**Settlement**") of certain post-closing transition matters relating to the *Q'Max Transition Services Agreement* (**TSA**"), dated July 2, 2020, entered into by and among: (1) the Trustee on behalf of Debtors;

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification numbers are: Q'Max America, Inc. (2319); and Anchor Drilling Fluids USA, LLC (5395).

(2) KPMG Inc. ("**KPMG**"), as receiver of Q'Max Solutions Inc., ("**QSI**," and together with the Debtors, "**Q'Max**"); (3) QMax Acquisition Corp., ("**QMax Acquisition**"), and (4) Drilling Services, LLC n/k/a Paragon Integrated Services Group, LLC (**Assignee**," and together with QMax Acquisition, "**Buyer**," and collectively with Q'Max, "**Parties**"); and

b. authorizing the Trustee to enter into and perform the agreement documenting the Settlement ("**Settlement Agreement**"), a copy of which is attached hereto as **Exhibit A**.

## JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

2. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012–6 (S.D. Tex. May 24, 2012). This Motion is a core-proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

3. The statutory bases for the relief requested herein are 11 U.S.C. §§ 105(a) of the Bankruptcy Code,[2] Rule 9019 of the Federal Rules of Bankruptcy Procedure, and Rule 9013–1 of the Bankruptcy Local Rules for the Southern District of Texas.

4. Venue is proper in pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The Court has constitutional authority to enter a final order regarding the Motion. Requests for authority to compromise disputes under Rule 9019 have no equivalent in state law, thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable.[3] In the alternative, a request for authority to compromise under Rule 9019 is an essential bankruptcy matter, triggering the "public rights" exception.[4]

---

[2] Any reference to "**Code**" or "**Bankruptcy Code**" is a reference to Title 11 of the United States Code, and any reference to "**Section**" or "**§**" refers to the corresponding section in Title 11, unless stated otherwise. Any reference to "**Rules**" or "**Bankruptcy Rules**" is a reference to the Federal Rules of Bankruptcy Procedure, unless stated otherwise
[3] *See In re Carlew*, 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012) (discussing *Stern v. Marshall*, 564 U.S. 462 (2011)).).
[4] *See id.*

**BACKGROUND**

6. On May 24, 2020 ("**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, commencing the jointly-administered cases. That same day, the United States Trustee appointed the Trustee.

7. The Debtors were part of QSI's North American operations, responsible for overseeing operations in the United States. Debtors' regional business in the United States included, *inter alia*, providing drilling and completion fluids, chemical additives, solids control services and equipment, waste management services and equipment, fluid engineering services, and other products and services in the northeastern United States (collectively, the "**Regional Business**").

8. After being appointed, the Trustee learned the Debtors had negotiated a sale of the Regional Business immediately prior to the Petition Date. However, the sale was not certain, so the Trustee only agreed to operate the Debtors' operations for a finite period of time while he investigated the feasibility of the sales process. On May 28, 2020, the Court entered an order allowing the Trustee to continue certain business operations in pursuit of a sale. These operations were initially authorized through June 10, 2020, which was extended on June 5, 2020 when the Court entered a second order allowing the Trustee to continue certain business operations in pursuit of a sale through July 5, 2020.[5]

9. On June 3, 2020, the Trustee filed an *Emergency Motion for Bid Procedures and Other Related Relief*, which was approved by the Court two days later.[6] The Court's order set forth certain bid deadlines, objection deadlines, and a final sale hearing date.[7]

---

[5] ECF Nos. 43 and 93, respectively.
[6] ECF Nos. 74 and 94, respectively.
[7] ECF No. 94.

10. The stalking horse bidder—QMax Acquisition—was the only bidder for the Regional Business. Thereafter, on July 1, 2020, the Court entered its *Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets by the Trustee; (II) Authorizing the Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Interests; (III) Authorizing the Assumption, Sale and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief* ("**Sale Order**"), approving the sale of the Regional Business, and authorizing, *inter alia*, the TSA.[8]

11. The sale of the Regional Business occurred on July 2, 2020 ("**Sale**") pursuant to the Sale Order.[9] That day, QMax Acquisition, as buyer, and Debtors, as sellers, entered into that certain *Second Amended and Restated Asset Purchase Agreement* (as amended, "**APA**"), pursuant to which QMax Acquisition acquired certain assets ("**Acquired Assets**") of Debtors related to the Regional Business in connection with the chapter 7 bankruptcy proceedings ("**Acquisition**").

12. Pursuant to that certain *Assignment and Assumption Agreement*, dated June 12, 2020, QMax Acquisition assigned its rights and obligations under the APA to the Assignee.

13. Pursuant to Section 3.1(b)(viii) and 3.1(c)(vi) of the APA, the Parties set forth the TSA terms under which (i) Q'Max would provide certain assistance to the Buyer in connection with the use and operation of the Acquired Assets following the Acquisition; and (ii) the Buyer would provide the services of certain personnel to Q'Max following the Acquisition.

14. The Parties have concluded the provision of the services to one another, and desire to terminate the TSA on the terms and subject to the conditions as set forth in the Settlement

---

[8] ECF No. 196.
[9] ECF No. 198.

Agreement, and mutually release each other of claims with respect to, and only with respect to the provisions and performance of the obligations of the Parties under the TSA.

15. The Trustee's *Declaration of Christopher R. Murray in Support of Settlement* (**Declaration**") is attached as **Exhibit B**.

## SUMMARY OF TERMS OF THE SETTLEMENT AGREEMENT

16. As noted, the Settlement Agreement reflects a global settlement amongst the Parties thereto. Set forth below is a summary of material provisions of the Settlement Agreement:[10]

| Term | Summary of Material Terms | Settlement Agreement Reference |
|---|---|---|
| **Parties** | (a) the Trustee on behalf of Debtors, and KPMG as receiver for QSI, on the one hand; and (b) QMax Acquisition and the Assignee, on the other hand | Preamble |
| **Effective Date** | May 26, 2022 | Preamble |
| **The TSA** | Termination of the TSA as of the Effective Date, with the rights and obligations of each of the Parties thereunder terminating, except for any rights and obligations of the Parties under Article IV (Confidentiality), Article V (Intellectual Property and Confidential Data), Article VI (Disclaimers; Limitations of Liability); Article VII (Indemnification); and Article X (Miscellaneous) | Section 1.1 |

---

[10] The following summary of the terms of the Settlement Agreement is subject entirely to the terms thereof and the Order. If there are any inconsistencies between the following summary and the terms of the Settlement Agreement, the Settlement Agreement shall control. Capitalized terms used in this summary, but not otherwise defined herein, shall have the meanings ascribed to such terms as in the Settlement Agreement.

| | | |
|---|---|---|
| **Agreement** | (a) the Trustee on behalf of the Debtors shall pay the Assignee an aggregate of $90,163.70, which shall be comprised of: (i) $20,000, as a refund of a deposit paid to the Debtors for the purchase of certain assets located in the Permian Basin, (ii) $25,458.91, as a refund of monies paid on behalf of the Debtors to Mountain Mud Service & Supply, Inc., and (iii) $44,704.79, as a refund of monies overpaid by Buyer in connection with the provision of benefits under the Benefit Plans incurred by the Continuing Employees; (b) Debtors shall sell, assign, transfer, and deliver to Assignee, and Assignee shall purchase and acquire from Debtors, all of their rights, titles, and interests, free and clear of all Liens, in each and all of the Purchased Assets in exchange for a purchase price of $100,000 in cash, effective as of the date of a Bill of Sale, and Assignee shall assume and shall pay when due, perform, and discharge, in due course, without duplication, all Liabilities related to or associated with the Purchased Assets, including, without limitation, any and all clean-up or remediation obligations under applicable Environmental Laws, and the Debtors shall have no further obligations whatsoever with respect to the Purchased Assets; (c) Buyer shall sell, assign, transfer, and deliver to the Trustee on behalf of the Debtors, and the Trustee on behalf of the Debtors shall purchase and acquire from Buyer, all of Buyer's right, title, and interest, free and clear or all Liens in the Laptops in exchange for a purchase price of $9,836.30 in cash, effective as of the date of a Bill of Sale; and (d) the Parties acknowledge the termination, effective August 31, 2020, of a prior Exclusive License Agreement, dated May 22, 2020, by and between QSI, as licensor, and QAI, as licensee, licensing all Intellectual Property Rights of QSI in the US, including the MaxSite suite of software. | Section 1.2 |
| **Releases** | The Settlement Agreement provides broad mutual releases by each Party solely in connection with the TSA, except for any Claims relating to rights and obligations preserved by, created by, or otherwise arising of the Settlement Agreement | Sections 2.1–2.2 |
| **Liability** | No Party admits, and each Party specifically denies any admission of liability with respect to the TSA | Section 2.3 |

17. The terms of the Settlement Agreement were negotiated by the Parties and their respective advisors. The Settlement Agreement is the product of good-faith, arm's-length negotiations, and the terms of the Settlement are fair and reasonable, and are in the best interests of the Debtors' estates.

## BASES FOR RELIEF REQUESTED

A. **SETTLEMENTS ARE FAVORED IN BANKRUPTCY AND THE TRUSTEE'S BUSINESS JUDGMENT IS GIVEN SIGNIFICANT DEFERENCE**

18. Rule 9019(a) provides "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct."[11] Compromises are favored in bankruptcy as they minimize litigation and expedite the administration of a bankruptcy estate.[12] Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise length, complicated, and costly."[13]

19. Pursuant to Rule 9019(a), this Court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate.[14] Approval of a compromise is within the "sound discretion" of this Court.[15]

---

[11] Fed. R. Bankr. P. 9019(a).
[12] *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal quotations omitted).
[13] *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).
[14] *See In re Age Ref. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015).
[15] *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *see also Jackson Brewing Co.*, 624 F.2d at 602–03 (same).

20. Generally, the role of this Court is not to decide the issues in dispute when evaluating a settlement.[16] Instead, this Court should determine whether the settlement as a whole is fair and equitable.[17] Further, under § 105(a), this Court "may issue and order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."[18] Authorizing the Trustee to proceed with the Settlement falls within the spirit of Rule 9019, if not the letter, as well as the Code's predilection for compromises. Thus to the extent necessary, § 105(a) relief is appropriate and would best harmonize the settlement process contemplated by the Code.

21. The Code also authorizes the use and disposition of property outside the ordinary course of business with court approval and a valid business reason. Specifically, § 363(b) authorizes the Trustee to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing.[19]

22. It is well established in this Circuit that one may use property of the estate outside the ordinary course of business, if there is a good business reason for doing so.[20] "Great judicial deference is given to the [debtor's] exercise of business judgment."[21] "As long as [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . .

---

[16] *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).
[17] *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).
[18] 11 U.S.C. § 105(a).
[19] 11 U.S.C. § 363(b)(1).
[20] *See, e.g.*, *ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors, and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (quoting *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308 (5th Cir. 1985) (Holding that the standard to assume a lease is the business judgment standard).
[21] *GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg.. Grp., Ltd.)*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005).

should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code."[22]

B. **THE SETTLEMENT SATISFIES THE THREE-FACTOR TEST COURTS IN THE FIFTH CIRCUIT EMPLOY TO ANALYZE PROPOSED SETTLEMENTS**

23. The Fifth Circuit has established a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. The factors a court must consider in determining whether a compromise is "fair, equitable, and within the best interest of the estate are: '(1) the probability of success in litigating the claim subject to settlement, with consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise.'"[23]

24. Before accepting a compromise, a Chapter 7 trustee must reach "an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays and expense of prolonged litigation in an uncertain cause."[24] The Bankruptcy Court does not substitute its own judgment for the trustee's, but instead reviews all the issues and determines "whether the settlement falls below the lowest point in the range of reasonableness."[25]

25. Under the rubric of the third factor referenced above, the Fifth Circuit has specified two additional factors bearing on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their

---

[22] *Richmond Leasing Co.*, 762 F.2d at 1309.
[23] *In re Roqumore*, 393 B.R. 474, 479 (Bankr. S.D. Tex. 2008) (citing the factors as set forth by *Jackson Brewing*); see also *Age Ref. Inc.*, 801 F.3d at 540 (same).
[24] *In re Mailman Steam Carpet Cleaning Corp.*, 212 F.3d 632, 635 (1st Cir. 2000) (citing *In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992)).
[25] *In re W.T. Grant Co.*, 699 F.2d 599, 609 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), cert. denied sub nom. *Benson v. Newman*, 409 U.S. 1039 (1972)).

reasonable views."[26] "While the desires of the creditors are not binding, a court 'should carefully consider the wishes of the majority of the creditors.'"[27] Second, the court should consider the "extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion."[28]

i. **Uncertainty Exists With Respect to Litigating Issues Between the Parties**

26. With respect to the "probability of success in litigating the claim subject to settlement," the Trustee understands there is inherent risk in any litigation. Originally, the Parties entered into the TSA to handle sale transition matters related to the APA and the sale of the Regional Business. However, unforeseen complications regarding the provision and quality of transition services as well as the payment for and need for certain transferred assets arose, including the arrangement of payments for claims relating to health insurance benefits within the tail end of the policy period. The Settlement Agreement provides the Parties with a comprehensive resolution of the remaining issues with the TSA, and eliminates potential overhanging liability which may delay the Trustee's administration of the Debtors' estates. The Trustee therefore believes, in his sound business judgment, the Settlement is a favorable outcome for the Debtors, their estates, and creditors, and provides certainty in a dispute at a critical juncture.[29]

ii. **Litigation with the Buyer Would Be Complex and Result in Delay and Distraction**

27. With respect to "the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay," potential litigation among the Parties would likely be costly

---

[26] *Conn. Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995); see also *Age Ref. Inc.*, 801 F.3d at 540 (noting the *Foster Mortgage* factors).
[27] *Foster Mortg. Corp.*, 68 F.3d at 917 (quoting *In re Transcontinental Energy Corp.*, 764 F.2d 1296, 1299 (9th Cir. 1985)).
[28] *Age Ref. Inc.*, 801 F.3d at 540; *Foster Mortg. Corp.*, 68 F.3d at 918 (citations omitted).
[29] *See* Declaration at 2, ¶¶ 5–6.

and time consuming. While the Trustee believes any litigation arising as a result of the TSA would not be inherently complex, if the Trustee were to litigate such issues, it would require significant time and expense, including discovery, at a time when the Trustee is focusing on finalizing liquidation of the Debtors' estates, claims reconciliation, and other litigation for the benefit of the Debtors' creditors. Engaging in this type of motion practice while simultaneously attempting to maximize Debtors' estates would not be economical and efficient.[30]

### iii. The Settlement is in the Best Interests of the Creditors

28. With respect to "all other factors bearing on the wisdom of the compromise," the Settlement is in the best interest of creditors. The Settlement Agreement removes potential liability from the Debtors' estates and avoids litigation where the results are somewhat uncertain. The Settlement Agreement will provide a global resolution of the disputes among the Parties with respect to the TSA and ensures the Trustee is able to continue liquidating the Debtors' estates without the distraction of any legal actions as a result. The Settlement therefore maximizes the value of the Debtors' estates for all parties by avoiding the expense of litigation and bringing final resolution to the disputes among the Parties.[31]

29. The Settlement also arises out of arm's-length, good faith negotiations among the Parties.[32]

30. Based on the foregoing considerations, the Trustee respectfully submits the Settlement is a fair and reasonable compromise and is in the best interest of the Debtors' estates.

---

[30] *See id.*
[31] *See id.*
[32] *See id.* at 1, ¶ 4.

**WAIVER OF BANKRUPTCY RULE 6004(A), (H)**

31. To implement the foregoing successfully, the Trustee requests this Court enter the Order providing that notice of the relief requested herein satisfies Rule 6004(a), and that the Trustee has established cause to exclude such relief from the 14–day stay period under Rule 6004(h).

WHEREFORE, the Trustee requests entry of the Order approving the Settlement, authorizing the Trustee to enter into and perform under the Settlement Agreement, and granting such other and further relief as the Court deems appropriate under the circumstances.

Dated: September 9, 2022

Respectfully submitted,

**CHAMBERLAIN, HRDLICKA, WHITE,
   WILLIAMS & AUGHTRY, P.C.**

By: */s/ Jarrod B. Martin*
Jarrod B. Martin
Texas Bar No. 24070221
Tyler W. Greenwood
Texas Bar No. 24123219
1200 Smith Street, Suite 1400
Houston, Texas 77002
D: 713.356.1280
F:  713.658.2553
E: jarrod.martin@chamberlainlaw.com
   tyler.greenwood@chamberlainlaw.com

***Counsel for Christopher R. Murray,
Chapter 7 Trustee***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 9, 2022, the foregoing Motion was filed with this Court and served electronically via this Court's CM/ECF system to all parties registered to receive notice of filings in this case.

*/s/ Jarrod B. Martin*
Jarrod B. Martin